UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
LARRY JACOBSON, as Chairman of the
Joint Board of the Electrical Industry,

                Plaintiff,

- against -

SURE ELECTRIC CONTRACTING
CORP. and MICHAEL DISCENZA,

                Defendants.
-------------------------------------------------------X

**REPORT AND RECOMMENDATION**

05 CV 137 (CBA)

On January 10, 2005, this action was commenced by plaintiff, Larry Jacobson, as Chairman of the Joint Board of the Electrical Industry (the "Joint Board") and the administrator of the Electrical Industry's various employee benefit plans,[1] against defendants Sure Electrical Contracting Corp. ("Sure") and Michael Discenza, pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA"). When defendants failed to file an answer or otherwise move with respect to the Complaint in a timely manner, the Clerk of the Court entered a default with respect to this action on July 15, 2005.

By Order dated July 22, 2005, the Honorable Carol B. Amon, United States District Judge, referred the matter to the undersigned to determine whether entry of a default judgment is appropriate, and to conduct an inquest on damages.

---

[1] These plans include the Pension, Hospitalization and Benefit Plan of the Electrical Industry, the Dental Benefit Fund of the Electrical Industry, the Deferred Salary Plan of the Electrical Industry (the "401(k) Plan"), the Educational and Cultural Trust Fund of the Electrical Industry, the Additional Security Benefits Plan of the Electrical Industry, the Annuity Plan of the Electrical Industry, the Vacation-Holiday Expense Plan of the Electrical Industry, and the Electrical Industry's Self Insurance Disability Plan (collectively, the "Plans"). See Declaration of Eyad Asad, dated July 13, 2005 ("Asad Decl.") ¶ 8).

## FACTUAL BACKGROUND

According to the Complaint, plaintiff is the administrator of various multi-employer employee benefit plans which provide fringe benefits to employees performing services within the jurisdiction of Local Union No. 3 of the International Brotherhood of Electrical Workers, AFL-CIO (the "Union"). (Asad Decl. ¶ 8). Defendant Sure is a corporation located at 3836 Richmond Avenue, Staten Island, New York and a signatory to the May 10, 2001 to May 13, 2004 Collective Bargaining Agreement with the Union (the "CBA"). (Id. ¶¶ 13, 18). Pursuant to the CBA,[2] defendant Sure is required to pay contributions to the Plans based on work performed by the individual employees of defendant. (Id. ¶ 13). Defendant is also required to file weekly payroll reports with the Joint Board. (Id.) The CBA establishes the amount of contributions due to the Joint Board for each of the Plans based on certain percentages of the employer's gross weekly payroll or a fixed dollar amount based on the number of hours worked by covered employees according to the payroll records. (Id. ¶ 14; Supp. Decl.[3] Ex. A, Articles II, III, VII). If an employer fails to make the required contributions in a timely manner in accordance with the CBA, and it becomes necessary to commence legal action to collect the contributions, the Joint Board requires payment of the unpaid contributions, interest and other penalties available under ERISA. (Asad Decl. ¶ 16; Supp. Decl. Ex. B).

In July 2004, the Joint Board entered into a Stipulation and Forbearance Agreement with

---

[2]The CBA was extended by an agreement between the Union and the New York Electrical Contractors, the Association of Electrical Contractors, Inc., and various independent or unaffiliated contractors. (Id. ¶ 13).

[3]Citations to "Supp. Decl." refer to the Supplemental Declaration of Eyad Asad in Support of Request to Enter Default Judgment, filed by Eyad Asad, Esq., on September 27, 2005.

defendant Sure ("Stipulation"), in which Sure agreed that it owed the Joint Board $49,445.87 for required contributions owed to the Plans for the period ending May 19, 2004 through June 23, 2004. (Asad Decl. ¶ 19; Supp. Decl. Ex. C). Defendant Discenza[4] executed the Stipulation individually and on behalf of Sure; he also executed an affidavit for Judgment by Confession ("Affidavit"). (Asad Decl. ¶ 20).

Pursuant to the terms of the Stipulation, Sure was to remain current on its required contributions within three weeks or face default. (Asad Decl. ¶ 21; Supp. Decl. Ex. C ¶ 9). Sure was then given three weeks to cure the default or face the jurisdiction of the court. (Id.)

By letter dated December 30, 2004, the Joint Board notified Sure that it was in default under the Stipulation because it had failed to remit nine weeks of required contributions and five installment payments due under the Stipulation. (Asad Decl. ¶ 22; Supp. Decl. Ex. D). According to the Declaration of plaintiff's counsel, Mr. Asad, Sure has failed to cure its default and currently owes $15,845.87 as the full unpaid balance under the Stipulation. (Asad Decl. ¶ 23).

In addition to the aforementioned notices, the Joint Board also sent Sure a letter dated March 3, 2005, demanding payment of unpaid contributions for the weeks ending December 22, 2005 through February 23, 2005. (Asad Decl. ¶ 24; Supp. Decl. Ex. F). Since that time, unpaid contributions have continued to accrue in the total amount of $56,664.30 for the period February 2, 2005 through May 4, 2005. (Asad Decl. ¶¶ 25, 27).

In addition, Salary Deferral Contributions have not been paid for the weeks ending January 5, 2005 through February 2, 2005 and employer contributions have not been paid from

---

[4] Discenza is the principal owner of Sure. (Compl. ¶ 10).

3

January 5, 2005 through February 9, 2005. (Asad Decl. ¶ 28; Supp. Decl. Ex. D). Sure also owes $13,821.50 for unpaid 401(k) Plan contributions for the period January 5, 2005 through May 4, 2005. (Id. ¶¶ 28–29; Supp. Decl. Ex. H).

The total amount which plaintiff alleges is currently owed to the Plans is $88,492.94, consisting of $15,845.87 for the unpaid amounts owed under the Stipulation, $56,664.30 for unpaid contributions, and $13,821.50 for unpaid 401(k) Plan Contributions. (Asad Decl. ¶ 30).

On January 10, 2005, plaintiff filed this action seeking an award of the delinquent contributions, plus interest, liquidated damages and attorney's fees as authorized by 29 U.S.C. § 1132. When defendants failed to answer, plaintiff filed a request for entry of a default judgment which was referred to this Court by Order dated July 22, 2005.

## DEFAULT

Rule 55(a) of the Federal Rules of Civil Procedure provides: "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Fed. R. Civ. P. 55(a). Rule 55 sets forth a two-step process in which first a default, and then a default judgment, is entered. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993). The court clerk automatically enters the default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure by noting the party's default on the clerk's record of the case. See id.

After a default has been entered against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), a default judgment may be entered. See

4

Fed. R. Civ. P. 55(b). Although an application for entry of default should be made before a motion for entry of default judgment, courts will generally excuse a failure to obtain entry of default before the motion for default judgment is made. See, e.g., Meehan v. Snow, 652 F.2d 274, 276 (2d Cir. 1981) (calling the failure to move for entry of default a "largely technical" omission); Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *1–2 (S.D.N.Y. Oct. 19, 1992) (citations omitted) (treating motion as a request for entry of default as well as for entry of default judgment, in order to balance " [r]igid adherence to these rules . . . against the need for efficient administration of justice"). Here, plaintiffs submitted a request for both entry of default and default judgment on July 13, 2005. The clerk of court entered a default on July 18, 2005.

In determining whether a default judgment should enter, courts have cautioned that a default judgment is an extreme remedy that should only be granted as a last resort. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance the interest in expediting cases with the court's responsibility to "[afford] litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95–96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," defaults are "generally disfavored" and doubts should be resolved in favor of the defaulting party. Id. at 96. Accordingly, the plaintiff is not entitled to a default judgment as a matter of right, simply because the defendants are in default. See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (stating that courts are required to "supervise default judgments with extreme care to avoid miscarriages

of justice," and ordering an inquest to determine damages).

The court possesses significant discretion and may consider a number of factors in deciding whether or not to grant a default judgment, including whether the grounds for default are clearly established, and the amount of money potentially involved. See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (citations omitted). The greater the amount of money involved, the less justification there is for entering the default judgment. Id.

Additionally, a court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and how harsh an effect a default judgment might have on the defendant. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981) (discussing factors); Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, 10A Fed. Practice & Procedure, §§ 2685, 2688 (3d ed. 1998).

Having reviewed the prior proceedings in the current case, this Court respectfully recommends that default judgment be entered. The Complaint clearly sets forth facts establishing a claim that the defendants violated Section 1145 of ERISA, which states:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Here, plaintiff has alleged that Sure, as an employer, was obligated under the CBA with the Union to make contributions to the Plans, and that Sure has failed to comply with its contractual obligations. (Asad Decl. ¶¶ 13, 23). In addition, plaintiff has alleged that the parties entered into a Stipulation signed by defendant Discenza on behalf of Sure agreeing to pay

unpaid contributions and to remain current on its obligations. (Id. ¶¶ 19–21; Supp. Decl. Ex. C). Plaintiff alleges that defendants have violated the Stipulation by failing to make the required payments. (Asad Decl. ¶¶ 22, 23).

Moreover, it is beyond dispute that defendants are in default. Both defendants are in default because they have not responded to the Complaint. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143 at *2 (holding that "[the defendant's] default is crystal clear - - it does not even oppose this motion"). Nor has the corporate defendant Sure obtained counsel. A corporation's failure to obtain counsel constitutes a failure to defend because corporations cannot proceed in federal court pro se. See Shapiro, Bernstein & Co. v. Cont'l Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (stating that "it is settled law that a corporation cannot appear other than by its attorney"); see also Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel only).

Moreover, defendants have not only failed to file an answer or otherwise move with respect to the Complaint, but they also failed to respond to plaintiff's motion for entry of a default judgment, as well as to the order from this Court relating to the calculation of damages. Given the numerous opportunities afforded defendants and their apparent lack of interest in participating in these proceedings, there seems to be no compelling reason to delay further.

Accordingly, it is respectfully recommended that plaintiff's motion for entry of a default judgment be granted.

## DAMAGES

It is well settled that the burden is on the plaintiff to establish its entitlement to recovery. See Clague v. Bednarski, 105 F.R.D. 552 (E.D.N.Y. 1985). When a default judgment is entered, the defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability. See Greyhound Exhibit Group, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (citing United States v. Di Mucci, 879 F.2d 1488, 1497 (7th Cir. 1989)); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); Deshmukh v. Cook, 630 F. Supp. 956, 959 (S.D.N.Y. 1986); 6 Moore's Federal Practice ¶ 55.03[2] at 55-16 (2d ed. 1988).

However, "unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." Wing v. East River Chinese Rest., 884 F. Supp. 663, 669 (E.D.N.Y. 1995); see also Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988), aff'd, 873 F.2d 38 (2d Cir. 1989) (stating that "the court must ensure that there is a basis for the damages specified in a default judgment"). "'While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.'" Levesque v. Kelly Communications, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)); see also Deshmukh v. Cook, 630 F. Supp. at 959. Thus, the plaintiff must still prove damages, and the defendant must have the opportunity to contest the claimed damages. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158 (stating that default does not constitute admission of

damages).

The court "may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. at 156 (citing Transportes Aereos De Angola v. Jet Traders Inv. Corp., 624 F. Supp. 264, 266 (D. Del. 1985)). Here, where the plaintiff has filed reasonably detailed affidavits and exhibits pertaining to the damages incurred, and where the defendants have failed to make an appearance in the case, the court can make an informed recommendation regarding damages without an evidentiary hearing.

1)  Damages Available Under ERISA

In an ERISA action brought by a fiduciary for or on behalf of a plan to enforce rights under Section 1145, the statute specifies the damages that "shall" be awarded when judgment is entered in favor of the plan. See 29 U.S.C. § 1132(g)(2). These include:

>     (A) the unpaid contributions,
>     (B) interest on the unpaid contributions,
>     (C) an amount equal to the greater of--
>         (i) interest on the unpaid contributions, or
>         (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>     (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>     (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). See, e.g., Iron Workers Dist. Council of W. N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502 (2d Cir. 1995) (discussing the remedies available under 29 U.S.C. § 1132(g)(2)).

9

According to Section 502(g)(2)(B) of ERISA, which governs the various Plans in this action, the employer is obligated to pay certain designated late charges whenever the employer fails to report and pay contributions within a specified period of time after the contributions become due. 29 U.S.C. § 1132(g)(2)(B). Here, the CBA specifies that if an employer has not paid all contributions due within 30 days of the due date, a demand letter shall be sent to the employer. If within 14 days of the date of the letter, all delinquent contributions have not been paid, "interest shall be assessed as of the day following the due date." (Supp. Decl. Ex. B). In addition, plaintiff claims that it is entitled to additional interest, plus reasonable attorney's fees. (Asad Aff. ¶¶ 39, 40).

2) <u>Calculation of Default Judgment Damages</u>

In their application, plaintiff seeks an award of unpaid required contributions for the period February 2, 2005 through May 4, 2005 (Asad Decl. ¶ 25), an award of the unpaid 401(k) Plan contributions, and the unpaid balance owed under the Stipulation. (<u>Id.</u> ¶¶ 29–30). In addition, plaintiff seeks interest on the unpaid required contributions, the 401(k) Plan contributions, and interest on the amount owed under the Stipulation, as well as additional interest in an amount equal to the interest due to all the Plans in accordance with ERISA. (<u>Id.</u> ¶¶ 34–39). Plaintiff also seeks an award of reasonable attorney's fees incurred in connection with this action. (<u>Id.</u> ¶ 40).

Based on the reports prepared by defendant which have been submitted in connection with this motion, plaintiff calculates the amount of delinquent contributions owed for the period of weeks ending February 2, 2005 through May 4, 2005 at $56,664.30. (Asad Decl. ¶ 25). The

accrued interest on these unpaid contributions, calculated at the rate of $7.76 per day through September 26, 2005, is $1,704.59. (Asad Decl. ¶ 35; Supp. Decl. Ex. J). The interest for the 183 day period from September 27, 2005, the date of plaintiff's submission of papers supporting their damages request, to March 28, 2006, the date of judgment, is $1,420.08. Thus, the total accrued interest on the unpaid contributions is $3,124.67.

Based on the reports submitted in connection with the motion, the amount of delinquent contributions owed to the 401(k) Plan is $13,821.50. (Asad Decl. ¶ 30). Interest calculated at the rate of $1.89 per day on these delinquent contributions amounts to a total of $424.11 in interest accrued during the period of delinquency through September 26, 2005. (Id. ¶ 36; Supp. Decl. Ex. J). The interest for the 183 day period from September 27, 2005 to March 28, 2006 is $345.87. Thus, the total accrued interest on the unpaid 401(k) contributions is $769.98.

Finally, having reviewed the terms of the Stipulation and the plaintiff's records of payments received pursuant to the Stipulation, it appears that defendants owe plaintiff $15,845.87 under the Stipulation. (Asad Decl. ¶ 30). At the rate of $2.17 per day, defendants also owe interest under the Stipulation amounting to $1,989.47. (Asad Decl. ¶ 34; Supp. Decl. Ex I). The interest for the additional 183 day period from September 27, 2005 to March 28, 2006 is $397.11. Thus, the total accrued interest on the Stipulation is $2,386.58.

In addition, under Section 502(g)(2)(C) of ERISA, defendants owe additional interest[5] in an amount equal to the interest on late-paid and unpaid contributions to all of the ERISA Plans. (Asad Decl. ¶ 38). Since the total amount of interest due through the date of judgment is

---

[5]The provision awarding additional interest is in lieu of an award of liquidated damages which is specifically authorized by ERISA. See 29 U.S.C. § 1132(g)(2)(c)(I).

11

$9,437.79,[6] plaintiff is entitled to an additional payment of $9,437.79 pursuant to Section 502(g)(2)(c) of ERISA. (Asad Decl. ¶ 39).

Having reviewed the Asad Declaration and supporting documentation, plaintiff's calculation of amounts owed appears to be accurate and this Court respectfully recommends that plaintiff be awarded: (1) $72,647.07 in delinquent contributions and sums owed under the Stipulation; (2) $9,437.79 in interest; and (3) $9,437.79 in additional interest owed for the period of delinquency.

2) Attorney's Fees

Plaintiff seeks attorney's fees in the amount of $1,392.50, representing services performed by counsel in connection with plaintiff's efforts to obtain this judgment from the inception of the litigation through the filing of the summary judgment motion. (Asad Decl. ¶ 42–43). In accordance with New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983), plaintiff's counsel has submitted the affirmation of Mr. Asad, as well as contemporaneous billing records, setting forth the dates and amount of time during which services were rendered, along with the name of the attorney and a description of services performed.

Plaintiff's counsel's affirmation indicates that two attorneys and two paralegals performed services in connection with this matter. (Asad Decl. ¶ 41). Their rates are as follows: Eyad Asad, an associate, at $200 per hour; James R. Grisi, also an associate, at $225 per hour;

---

[6] This sum of $9,437.79 was calculated by adding the interest owed on unpaid contributions in the amount of $3,124.67 to the amount of interest owed to the 401(k) Plan in the amount of $769.98, plus the $2,386.58 in interest owed under the Stipulation.

and two paralegals, each at $75 per hour. (Id. ¶ 42; Supp. Decl. ¶ K). These rates appear to be commensurate with or lower than the billing rates utilized in fee awards in labor cases in the Southern District of New York. See, e.g., Farkas v. Soft Drink & Brewery Workers Local 812, No. 91 CV 7636, 1996 WL 578100, at *5 (S.D.N.Y. Oct. 8, 1996) (finding reasonable hourly rates ranging from $135 to $275); Schermerhorn v. Transp. Workers Union of Am. Local 100, No. 93 CV 6686, 1996 WL 79334, at *4 (S.D.N.Y. Feb. 23, 1996) (finding $300 per hour reasonable for a partner). While the Second Circuit has held in an employment discrimination suit that the prevailing market rate should be that for attorneys practicing in the Eastern District of New York, see Luciano v. Olsten Corp., 109 F.3d 111, 115 (2d Cir. 1997), this Court has not found any cases in this district that would suggest that plaintiff's counsel's rates are not within the range of prevailing rates for attorneys engaged in this type of practice in the Eastern District of New York. Indeed, even if the prevailing rate was lower in this district, the rates charged by plaintiff's counsel here are, in fact, somewhat lower than the rates used to calculate fees in the Southern District. Accordingly, this Court recommends that the rates sought be approved. Moreover, based on a review of the description of the services rendered, this Court finds plaintiff's request for attorney's fees to be reasonable and appropriate under the circumstances.

In addition to attorney's fees, plaintiff seeks an award of costs, consisting of a filing fee of $150.00, service fees of $185.00 and additional expenses of $42.47. (Asad Decl. ¶ 45; Supp. Decl. Ex. K). Having reviewed the Asad Declaration and supporting documentation, this Court respectfully recommends that plaintiff's request for costs be granted as reasonable.

## CONCLUSION

Accordingly, it is respectfully recommended that plaintiff be awarded damages in the amount of $72,647.07 in delinquent contributions, $9,437.79 in interest, $9,437.79 in additional interest, and $1,769.97 in attorneys' fees and costs.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to mail copies of this Report and Recommendation to the parties.

**SO ORDERED.**

Dated: Brooklyn, New York
March 28, 2006

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge